# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-01969-TUC-JGZ-JR |
| Plaintiff, | **ORDER** |
| v. | |
| Ahmad Montez Jackson, | |
| Defendant. | |

Defendant Ahmad Montez Jackson is charged with possession of a firearm by a felon, conspiracy to transport illegal aliens for profit, and two counts of transportation of illegal aliens for profit. (Doc. 7.) Pending before the Court are Jackson's Motion to Dismiss the charge of possession of a firearm by a felon and Motion to Suppress the stop that led to his arrest. (Docs. 13, 20.) Magistrate Judge Rateau heard arguments on the Motion to Dismiss and held an evidentiary hearing on the Motion to Suppress. (Doc. 26.) In a Report and Recommendation (R&R), Magistrate Judge Rateau recommends this Court deny Jackson's motions. (Doc. 31.) Jackson has filed an Objection to the R&R, and the government has filed a Response. (Docs. 35, 37.) Having considered the parties' arguments and the record, the Court will adopt Magistrate Judge Rateau's R&R.

**I.    Standard of Review**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court must undertake de novo review of those portions of the R&R to which specific objections are

made. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The Court may not reject the credibility finding of a magistrate judge without conducting its own de novo evidentiary hearing. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

**II.     Motion to Dismiss**

In his Motion to Dismiss, Jackson argues the charge of possession of a firearm by a felon, a violation of 18 U.S.C. § 922(g), should be dismissed by the Court because § 922(g) violates the Second Amendment. (Doc. 13.) Jackson relies on the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which revised the constitutional analysis for challenged laws that implicate an individual's rights under the Second Amendment.

Magistrate Judge Rateau recommends denying Jackson's Motion, concluding that the federal felon-in-possession statute is constitutional on its face and as applied. (Doc. 31 at 11–12.) In her analysis, Magistrate Judge Rateau discusses and adopts the Third Circuit Court of Appeal's reasoning in *Range v. Attorney General*, 53 F.4th 262, 266 (3d Cir. 2022),[1] and cites numerous lower court decisions which have also considered and upheld the constitutionality of the felon-in-possession statute. (Doc. 31 at 9–11.)

In his Objection, Jackson contends that *Range* and the lower federal court decisions do not undercut the dissenting opinion of now-Justice Barrett in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), which supports his argument that the felon-in-possession statute is unconstitutional. (Doc. 35 at 4; *see also* Doc. 31 at 9–11.)

In *District of Columbia v. Heller*, the Supreme Court reaffirmed the constitutionality of "longstanding prohibitions on the possession of firearms by felons." 554 U.S. 570, 626 (2008). In *Bruen*, six justices noted that nothing in the majority opinion should be taken to

---

[1] The Court does not rely on *Range* in its analysis; the Third Circuit recently vacated its opinion and will rehear the matter en banc. *See* Order Sur Petition for Rehearing En Banc, *Range v. Attorney General*, No. 21-2835 (3d Cir. January 6, 2023).

cast doubt on this holding in *Heller*.[2] Jackson points to no binding authority—and the Court finds none—holding otherwise. The Court is bound by *Heller*. The Court thus concludes the federal felon-in-possession statute is constitutional on its face and as applied. As Jackson observes, this issue will ultimately be decided by the U.S. Supreme Court. (Doc. 35 at 5.)

The Court will overrule Jackson's Objection, adopt Magistrate Judge Rateau's recommendation, and deny Jackson's Motion to Dismiss.

### III.   Motion to Suppress

In his Motion to Suppress, Jackson argues that Border Patrol Agent Gonzalez's August 9, 2022 stop violated the Fourth Amendment. (Doc. 20.) At the November 23, 2022 evidentiary hearing, the government presented as witnesses Border Patrol Agents Gonzalez and Munoz. (Doc. 31 at 1.)

Agent Gonzalez testified that he stopped Jackson in part because Agent Munoz, who was operating a drone at the time, announced over the radio that he saw two "hot spots" running towards Jackson's vehicle after it pulled over. (Doc. 32 at 12–14.) On cross-examination, Agent Gonzalez conceded that he failed to include this information in his August 9, 2022 incident report. (Doc. 32 at 21.)

Agent Munoz testified that, while operating a drone and following Jackson's vehicle, he believed he saw two human-like heat signatures enter the vehicle and conveyed that information to Agent Gonzalez over the radio. (*Id.* at 34–35.) At the hearing, defense counsel played the drone's video footage, which showed no heat signatures. (*Id.* at 43–48.) Agent Munoz testified that the downloaded drone's video footage lost its quality and failed to transfer what he observed on the drone controller. (*Id.* at 48.) Although he included the information about the two heat signatures in his incident report, Agent Munoz wrote his report on November 20, 2022, three days before the evidentiary hearing, and dated it

---

[2] *See Bruen* at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same); *id.* at 2189 (Breyer, J., joined by Kagan, J., and Sotomayor, J., dissenting) (same).

August 10, 2022. (*See* Doc. 29; *compare* Ex. 10 *with* Ex. 12.) Another copy of the report was admitted with the correct date, November 20, 2022, handwritten onto the report. (*Id.*)

Magistrate Judge Rateau, applying the totality-of-circumstances test from *United States v. Berber-Tinoco*, 510 F.3d 1083 (9th Cir. 2007), concludes the stop comported with the Fourth Amendment. (Doc. 31 at 6–9.) Magistrate Judge Rateau found that the characteristics of the area, proximity to the border, previous smuggling activities in the area, traffic patterns, time of day, driver behavior, vehicle characteristics, and the agents' collective experience provided Agent Gonzalez with reasonable suspicion to believe Jackson was illegally transporting undocumented aliens and to stop Jackson's vehicle. (*Id.*)

In reaching this conclusion, Magistrate Judge Rateau found that Agent Munoz's observation of two heat signatures moving from the brush towards the vehicle supported the agents' belief that Jackson was involved in alien smuggling.[3] (*Id.* at 8.) Implicit in this finding is Magistrate Judge Rateau's determination that Agents Gonzalez and Munoz testified credibly despite Agent Gonzalez not mentioning the heat signatures in his report, Agent Munoz backdating his report, and the drone's video footage failing to confirm their testimony about the heat signatures.

Jackson's Objection turns on Magistrate Judge Rateau's credibility findings. In his Objection, Jackson challenges Magistrate Judge Rateau's finding that Agent Munoz saw two heat signatures approach the vehicle and communicated this information to Agent Gonzalez over the radio. (Doc. 35 at 1–2.) Jackson asserts Agents Munoz and Gonzalez testified falsely about the heat signatures. (*Id.* at 4.) Jackson further argues that the agents' willingness to give false testimony about the heat signatures demonstrates they knew there was insufficient evidence to justify the stop and undercuts the credibility of their entire

---

[3] Magistrate Judge Rateau wrote the following in her R&R:

> While the car was stopped, Agent Munoz saw two "heat signatures" moving east through the brush towards the sedan. . . . Agent Munoz informed the Tactical Operations Center (TOC) as well as Agent Gonzalez that he believed the sedan may have picked up UNCs [undocumented noncitizens].

(Doc. 31 at 3–4.)

testimony regarding all other factors that reportedly justified the stop. (*Id.*) Jackson urges the Court to conclude that Agents Munoz and Gonzalez's testimony is false because: (1) Agent Gonzalez failed to mention the heat signatures in his report; (2) Agent Munoz backdated his report, which he wrote months after the incident; and (3) the drone's video footage shows no heat signatures. (*Id.* at 1–4.)

The Court may not reject Magistrate Judge Rateau's credibility finding without conducting its own de novo evidentiary hearing. *Ridgway*, 300 F.3d at 1157. Magistrate Judge Rateau was best positioned to determine Agent Gonzalez and Munoz's credibility because she could observe them and evaluate their demeanor and tone as they testified. *See Miller v. Fenton*, 474 U.S. 104, 114 (1985) (reviewing courts generally defer to trial courts on issues involving witness credibility, which "turns largely on an evaluation of demeanor"). Although Jackson presents three reasons why the Court should doubt the agents' testimony, the Court finds them insufficient grounds to reject Magistrate Judge Rateau's credibility findings.

First, the fact that Agent Gonzalez's incident report fails to reference Agent Munoz's observation of two heat signatures does not undermine Magistrate Judge Rateau's finding that Agent Munoz conveyed that information to Agent Gonzalez in light of the other evidence. (*See* Doc. at 31 at 4, 8.) Agent Gonzalez testified that "Munoz came over the radio, saying that the vehicle had pulled on the side of the road, and then he could see some hot spots running to the vehicle." (Doc. 32 at 12–13.) Agent Gonzalez understood that to mean there were persons trying to load into a vehicle. (*Id.*) Although his report does not mention the hot spots or heat signatures, it does state that Agent Munoz was communicating the movement of Jackson's vehicle to Agent Gonzalez over the radio.[4] (*See*

---

[4] In his incident report, Agent Gonzalez wrote:

> BPA Munoz then informed me over the service radio that the vehicle had pulled over on the west side of the road for approximately 30 seconds . . . . Shortly after, BPA Munoz notified me that the vehicle pulled out and began going back south on Brooks Road.

(*See* Doc. 29; Ex. 13.)

Doc. 29; Ex. 13.) Those details in the incident report and Agent Munoz's testimony that he announced his observation of the heat signatures over the radio corroborate Agent Gonzalez's testimony.

Next, Agent Munoz's backdated report is insufficient to undermine Magistrate Judge Rateau's finding that Agent Munoz testified credibly. It appears Agent Munoz wrote his incident report on November 20, 2022, three days before the evidentiary hearing, and backdated it to August 10, 2022, the day after Jackson's arrest. (*See* Doc. 29; *compare* Ex. 10 *with* Ex. 12.) A federal law enforcement officer backdating an incident report is no minor misstep, and Agent Munoz did not offer any explanation for his error. Nor was he asked to explain his error. Even so, it does not necessarily follow that his entire testimony is false. Agent Munoz did not conceal the fact that the first report's date was inaccurate; instead, he testified accurately that he wrote the report in November 2022 rather than August 2022. (*See* Doc. 32 at 49–50.) The government also provided defense counsel with the report, with the date corrected, prior to the evidentiary hearing. (*See* Doc. 35 at 2.) Further, Agent Munoz's testimony is corroborated by the testimony of Agent Gonzalez, who confirmed that Agent Munoz announced over the radio that he saw two heat signatures approach the vehicle.[5]

Finally, the lack of heat signatures in the drone's video footage does not undermine Magistrate Judge Rateau's finding that the agents testified credibly because the video footage appears unreliable. When first shown "Clip 1" of the video footage, Agent Munoz testified that it did not accurately reflect what he observed on the drone controller on the morning in question.[6] (*See* Doc. 32 at 48.) He explained there was an issue with the quality

---

[5] The Court recognizes Jackson is arguing that the agents colluded to contrive the testimony about the heat signatures, and that the agents' "corroborating" testimony could also be evidence of collusion. However, given Magistrate Judge Rateau's findings after observing the officers' testimony, and having reviewed the transcript where Agent Munoz appeared surprised that the video footage did not show the heat signatures, *see infra* note 6, the Court will adopt Magistrate Judge Rateau's credibility finding.

[6] Agent Munoz was shown the video clip which purportedly documented the drone's video footage, and the following exchange between defense counsel and Agent Munoz occurred:

- 6 -

of the video and that what he observed on the drone controller did not transfer to the recorded video footage. (*Id.*) Notably, the absence of human-like heat signatures was not the only defect Agent Munoz identified in the footage. Agent Munoz was also unable to recognize the presence of the vehicle, which neither party disputes was present that morning. (*See id.*)

Magistrate Judge Rateau concluded that Agents Gonzalez and Munoz testified credibly despite Agent Gonzalez not mentioning the heat signatures in his report, Agent Munoz backdating his report, and the drone's video footage failing to confirm their testimony about the heat signatures. Indeed, the focus of defense counsel's cross-examination and oral argument at the evidentiary hearing centered on these issues. As discussed above, the record does not undercut the credibility findings made by Magistrate Judge Rateau, who was well-positioned to observe each witness and evaluate their demeanor and tone. *See Miller*, 474 U.S. at 114. For all of these reasons, the Court will overrule Jackson's Objection, adopt Magistrate Judge Rateau's recommendation, and deny Jackson's Motion to Suppress.

**IV.  Conclusion**

Accordingly,

**IT IS HEREBY ORDERED:**

1. Jackson's Objection (Doc. 35) is **overruled**.

2. Magistrate Judge Rateau's Report and Recommendation (Doc. 31) is

---

Q:  And the yellow things attached to the blue rectangular object are the tires, correct?
A:  No. I don't know what that is. That's not the -- that's not the vehicle.
Q:  Okay.
A:  The video didn't transfer. From what I saw on the controller --
Q:  Okay.
A:  -- is completely different than what got transferred. Somehow the quality got lost.
Q:  Oh, okay. So what you're saying is that clip that the Judge saw doesn't show people coming into that car?
A:  No, not at all, not at all.

(Doc. 32 at 48.)

- 7 -

**adopted**.

3. Jackson's Motion to Dismiss (Doc. 13) is **denied**.

4. Jackson's Motion to Suppress (Doc. 20) is **denied**.

Dated this 13th day of February, 2023.

Honorable Jennifer G. Zipps
United States District Judge